IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DANNIE L. STEPHENSON,**

      **Plaintiff**

      v.

**JLG INDUSTRIES, INC., LARRY ETCHISON, and KEVIN WILSON,**

      **Defendants**

: Case No. 1:09-CV-1643
:
: (J. Rambo)

## M E M O R A N D U M

Plaintiff, Dannie L. Stephenson, commenced this action bringing interference and retaliation claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Presently before the court is Defendants' motion for summary judgment. (Doc. 24.) The parties have briefed the issues and the motion is ripe for disposition. For the reasons that follow, the court will grant Defendants' motion on both counts.

**I.    Background**

    **A.    Parties**

Defendant JLG Industries, Inc. ("JLG") is a designer, manufacturer and marketer of access equipment, including aerial work platforms such as boom lifts and scissor lifts. (Doc. 26, Def.'s Statement of Material Facts ("SMF"), ¶ 1.) Defendant Larry Etchison is the former human resources director at JLG's Shippensburg facility. (Doc. 1, Compl. ¶ 4.) Defendant Kevin Wilson is the Head Supervisor of the Machine-Made Line at the JLG Shippensburg facility. (*Id.*, ¶ 5.)

Plaintiff, Dannie L. Stephenson, is a former full-time employee at the JLG Shippensburg facility. (SMF, ¶ 2; Doc. 29, Pl.'s Response to SMF, ¶ 2.)

### B. Facts[1]

The following facts are drawn from the parties' statements of material fact, and the exhibits and affidavits attached thereto, and are undisputed except where noted.

On February 19, 2007, Plaintiff was hired as a full-time employee at JLG's Shippensburg facility. (SMF, ¶ 2; Doc. 29, Pl.'s Response to SMF, ¶ 2.) Plaintiff was provided with a copy of JLG's Team Member Handbook, which includes a policy on drug and alcohol use. (SMF, ¶ 2.) JLG's Drug and Alcohol Policy prohibits employees from possessing, using, or consuming alcohol during work hours or while engaged in company business. (*Id.*, ¶ 3.) Being intoxicated during work hours is also prohibited. (*Id.*) For current employees, drug and alcohol screening tests are performed following workplace accidents and based on reasonable suspicion. (*Id.*) An employee who refuses to undergo testing is discharged.[2] (*Id.*)

---

[1] In *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 148–49 (3d Cir. 2002), the Third Circuit reaffirmed its supervisory rule first announced in *Vadino v. A. Valey Engineers,* 903 F.2d 253, 259 (3d Cir.1990) that "the district courts in this circuit [must] accompany grants of summary judgment hereafter with an explanation sufficient to permit the parties and this court to understand the legal premise for the court's order." *Vadino*, 903 F.2d at 259. Here, the court will identify those facts that are subject to genuine dispute, and cite to the record in order to highlight the precise nature of any disputed facts. The court will not cite to the record where the facts are undisputed; instead, the court will rely on the statements of material fact and admissions submitted by the parties. The materiality of any genuinely disputed facts will be analyzed in the discussion section below.

[2] Plaintiff does not dispute this characterization of JLG's drug and alcohol policy, but does dispute that JLG consistently tested employees who he believes were obviously under the influence of alcohol or drugs. (Pl.'s Response to SMF, ¶ 3.)

In October 2007, Plaintiff approached Julie Pharo, a human resources representative, with questions regarding FMLA leave. (*Id.*, ¶ 6.) On November 19, 2007, Plaintiff submitted an FMLA request and other required papers. (*Id.*, ¶ 7.) On February 19, 2008, Plaintiff requested intermittent FMLA leave in order to allow him to assist with his wife's medical treatment. (*Id.*) Etchison approved Plaintiff's FMLA request. (*Id.*) Etchison also told Plaintiff that he would "work with" Plaintiff to accommodate his scheduling needs. (*Id.*, ¶ 8.) Plaintiff claims, however, that despite this offer, Etchison continued to write him up for missed time. (Pl.'s Response to SMF, ¶ 8.)

On February 29, 2008, Defendant Etchison was informed by Plaintiff's co-workers that Plaintiff intended to use FMLA leave for reasons other than his wife's medical care treatment. (Etchison Dep. 125:1-20; Doc. 25-21, Ex 20.) For instance, Etchison heard from one of Plaintiff's co-workers that Plaintiff intended to take his car to Naugle Motors to have it repaired during a scheduled FMLA absence.[3] (Etchison Dep. 125:1-20.) In response, Etchison investigated to determine whether Plaintiff was using FMLA leave for unintended purposes. (SMF, ¶ 13.) Etchison spoke to a representative of Naugle Motors and was told that Plaintiff brought his truck in for repairs on the morning of March 3, 2008, one of Plaintiff's FMLA leave days. (*Id.*) Etchison also called and left a message with the therapy center at Chambersburg Hospital to determine whether Plaintiff had taken his wife for her treatment scheduled that day. (*Id.*) Upon returning to work on March 4, 2008, Etchison confronted Plaintiff about his use of FMLA leave. (*Id.*, ¶ 14.) Plaintiff

---

[3] Plaintiff denies telling any co-worker that he intended to use FMLA leave to get his truck fixed. (Pl.'s Response to SMF, ¶ 12.)

responded that he was home taking care of his wife. (*Id.*) Plaintiff received no disciplinary action related to this incident. (*Id.*)

On March 14, 2008, three individuals working in Plaintiff's immediate vicinity observed that Plaintiff smelled of alcohol. (*Id.*, ¶ 15.) Pharo, the human resources representative, reported this information to Etchison who in turn informed Wilson. (*Id.*) Wilson and Etchison confirmed with the three individuals that they smelled alcohol on Plaintiff's breath. (*Id.*) At approximately 10:30 a.m., Plaintiff was taken into an office at which point Pharo also detected the smell of alcohol. (*Id.*, ¶ 16.) Etchison informed Plaintiff that because four JLG team members reported smelling the odor of alcohol on him, he would be required to take a drug and alcohol test based on reasonable suspicion in accordance with company policy. (*Id.*) Plaintiff originally consented to the test saying "let's do it, let's go now." (Stephenson Dep. 241:16). However, Plaintiff objected to the test when he was informed that he would be immediately driven to the testing facility because he was suspected of being under the influence of alcohol. (*Id.* at 241:19-245:4.) Plaintiff claimed that he would get tested later that day after he went on FMLA leave, which was scheduled to begin at noon. (*Id.* at 155:3-6.) Plaintiff planned to take his wife to her appointment at 2:15 p.m. and he told Etchison he would get tested at that time because the testing facility is located in the same building. (*Id.* at 241:19-245:4.) During this confrontation, Plaintiff argued with Etchison that there was no point in having him leave immediately to get tested, come back to work, and then leave to go back to the same facility. In explaining himself, Plaintiff testified at his deposition as follows:

> [I]'m not wasting gas that way. I'm falsely being accused of something I did not do. I'm not going to change my

>personal life because somebody wants something. If it was during work hours, that would have been one thing. No, you're not going to come to me and have me go to your doctor, go take a pee test and come back on my own free will. Like I told them in that tape, I will do it under my own free will.

(*Id.* at 155:6-13.)

***

>Look at what time it is. It's lunchtime. There is no way you are going to run me for I don't know who is going to drive me, to drive me that in that time limit down there in lunch hour traffic, sit there, Lord knows how long you would sit there until they pee you, just for me to come back to work. That's if I'm back in time to leave by 12. But if not, I'm not coming back to work and then leave at 12. I will do this under my own free will when I leave this facility.

(*Id.* at 155:15-156:1.)

***

>Q: Okay. And then [Etchison] asked you again, are you refusing to get the testing. Correct?
>
>A: Correct.
>
>Q: Okay. And then you said, Then I will, I will refuse to go, you'd go at your own free will, you'd have to – you'd do it when you were free to do it at 12:00. You weren't going to run down, come back work and leave at 12:00, that's [b.s.].
>
>A: True.

(*Id.* at 244: 9-17.)

After determining that Plaintiff's actions constituted a refusal to be tested, Plaintiff was immediately suspended pending termination. (SMF, ¶ 19.) Plaintiff was terminated on March 14, 2008.[4] (*Id.*, ¶ 20.)

---

[4]   The parties raise additional undisputed facts that are not particularly relevant to the determination of this motion. For example, between November 5, 2007, and November 15, 2007,
(continued...)

### C. **Procedural History**

On August 25, 2009, Plaintiff filed the instant complaint against Defendants JLG, Etchison, and Wilson.[5] (Doc. 1.) In December 2009, Plaintiff stipulated to the dismissal of Count III of the complaint, which was for common law wrongful discharge. (Doc. 14.) The remaining claims are made pursuant to the FMLA, including FMLA interference (Count I) and FMLA retaliation (Count II). On January 28, 2011, Defendants filed a motion for summary judgment (Doc. 24), brief in support (Doc. 25), and statement of material facts. (Doc. 26.) Plaintiff filed a brief in opposition (Doc. 28) and response to Defendants' statement of material

---

[4](...continued)
Plaintiff missed six days of work because of his wife's medical condition. (SMF, ¶ 9.) She was admitted to the hospital on November 11, 2007 and discharged on November 15, 2007. (*Id.*) Etchison told Plaintiff that JLG would work with him to accommodate his difficult situation. (*Id.*) The parties agreed that Plaintiff could use vacation for four of the missed days in exchange for his agreement to work while the plant was shut down for the holidays in December 2007. (*Id.*)

The Defendants also state, and Plaintiff does not directly dispute, that during a prior incident where Plaintiff injured his shoulder on the job, Plaintiff received a medical exam that reported a blood alcohol level of 0.056 percent at 11:08 a.m. (SMF, ¶ 15.) Plaintiff did not receive any disciplinary action for that incident. (*Id.*)

Lastly, the parties do not dispute that on February 6, 2008, Wilson received a report that Plaintiff referred to a co-worker in racially derogatory terms resulting in a one and one-half day suspension. (SMF, ¶ 11.)

The court does not find much probative value to these undisputed facts, and apparently the parties agree. Plaintiff argues that Defendant is trying to boot-strap these issues which have no relevance to the primary question, namely, "was the motivation for the termination his use of FMLA leave or his refusal to be transported for an alcohol screen." (Pl.'s Br. in Opp., p. 11, n. 7.) Defendants agree, stating that Plaintiff raised these irrelevant issues in his complaint and, "for th[is] reason alone," they were addressed in Defendants' motion. (Def.'s Reply Br., p. 1.) Therefore, the court need not consider these facts in any material way in the disposition of this motion.

[5] Plaintiff's brief in opposition to Defendants' summary judgment motion indicates that Plaintiff's counsel "advised counsel for Defendants, after the deposition of Kevin Wilson, that he believed there was no longer a basis to keep Wilson as a party defendant and that he was willing to discontinue the action as to Wilson, only." (Doc. 28 at 1-2, n. 1.) Defendants do not dispute this assertion.

facts (Doc. 29) on February 23, 2011. Defendants filed a reply brief on March 14, 2011. (Doc. 30.)

**II.        Legal Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Upon such a showing, the burden then shifts to the non-moving party to present "specific facts showing the existence of a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*

7

*Corp.*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**III.** **Discussion**

    **A.** **FMLA Interference**

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act. 29 U.S.C. § 2615(a)(1). To assert an interference claim, "an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007). Moreover, 29 U.S.C. § 2617(a), which sets forth a private right of action for violations of § 2615, requires a showing that the plaintiff was prejudiced by the violation.[6]

---

[6] That section provides that the employer is liable only for compensation and benefits lost "by reason of the violation," 29 U.S.C. § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," 29 U.S.C. § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion. 29 U.S.C. § 2617(a)(1)(B). *See also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) ("29 U.S.C.S. § 2617 provides no relief unless the employee has been prejudiced by the violation."); *Kerns v. Drexel Univ.*, 2009 WL 2004378, *10 (E.D. Pa. July 8, 2009) ("employees have the burden of proving both 'real impairment of their rights *and* resulting prejudice.'") (citing 29 U.S.C. § 2617) (emphasis in original.)

Plaintiff's interference claim is predicated on three complaints: (1) Etchison's telephoning the Pulmonary Rehabilitation Clinic at Chambersburg Hospital to determine if Plaintiff's wife kept her appointment; (2) Etchison's investigating whether Plaintiff's truck was in the shop; and (3) the request that Plaintiff submit to a "frivolous" drug/alcohol test. (Doc. 1, Compl. ¶¶ 21, 22, 26, 27, 39.) Defendants contend that they are entitled to summary judgment because the record shows that Plaintiff's FMLA rights were unimpeded. (Def.'s Br. in Supp. at 15.) Specifically, Defendants note that Plaintiff admitted at his deposition that no one at JLG interfered with his ability to take FMLA leave. (*Id.*) Defendants also argue that Etchison's investigations do not constitute interference because they were entitled to investigate whether Plaintiff was abusing FMLA leave after hearing from one of Plaintiff's co-workers that Plaintiff intended to use FMLA leave for reasons other than its intended purpose. (*Id.* at 16.) Lastly, Defendants argue that, should the court find that Defendants interfered with Plaintiff's FMLA leave, summary judgment is nevertheless warranted because Plaintiff has not demonstrated any prejudice resulting from the alleged interference. (Def.'s Reply Br. at 5.)

As a threshold matter, to assert a valid FMLA interference claim, Plaintiff must show some form of interference with his FMLA benefits. *Sarnowski,* 510 F.3d at 401. Plaintiff's own deposition testimony belies this basic point. At his deposition, Plaintiff testified as follows:

> Q: Can you identify for me every occasion in which you wanted to take FMLA where someone told you, no, you can't have it?
>
> A: No, no one at the company. All I had to do was call in and say, I'm taking the FMLA day. That's why all these documents about doctor's reports, that explains that, for up

>       to 12 weeks leave.  My wife needs it or my wife needs my
>       care, period.

(Stephenson Dep. 153:11-18).  Thus, Plaintiff's own testimony indicates that, prior to Plaintiff's termination, Defendants did not deny Plaintiff's FMLA leave requests or otherwise restrain him from exercising his rights to FMLA leave.

Additionally, Etchison's investigations into Plaintiff's use of FMLA leave do not constitute FMLA interference because courts have repeatedly upheld the termination of employees following similar investigations.[7] *Vail v. Raybestos Prods. Co.*, 533 F.3d 904 (7th Cir. 2008) (upholding termination of employee where employer received tips that employee was abusing intermittent FMLA leave which were confirmed by an off-duty police investigation); *Stonum v. U.S. Airways, Inc.*, 83 F. Supp. 2d 894 (S.D. Ohio 1999) (finding no FMLA violations for employee's termination following a private investigation confirming FMLA leave used for purposes other than its intended purpose); *Moughari v. Publix Super Markets*, 1998 WL 307454, *1-2 (N.D. Fla. April. 27, 1998) (finding no FMLA interference where employee's supervisor called employee several times to determine his status while on intermittent FMLA leave and ultimately terminating employee after determining that employee was working at a second job).  Moreover, it is undisputed that no disciplinary action was taken based on Defendants' investigation into Plaintiff's whereabouts on March 3, 2008.  Thus, because Defendants' investigation was

---

[7] In his response to Defendants' motion, Plaintiff emphasizes that contacting the Pulmonary Rehabilitation Clinic was "improper" and "unusual" because Defendants were trying to obtain information protected by privacy laws. (Doc. 28, p. 2, 7). While that may be true, Plaintiff fails to point to any evidence or authority that suggests that such an action might interfere with Plaintiff's FMLA leave rights. Moreover, Plaintiff concedes that no confidential information was furnished to Defendants. Accordingly, the court finds no FMLA interference on this basis.

permissible and no actual injury or prejudice resulted, Plaintiff's interference claim must fail in this regard.

Plaintiff's argument that the request that he submit to a drug and alcohol test constitutes FMLA interference likewise must fail. First, JLG's team member handbook states:

> TYPES OF TESTING
> JLG will conduct drug/alcohol screening in the following situations:
>
> 1. Pre-employment (drug only)
>
> 2. Reasonable suspicion
>
> 3. Post-accident

(Doc. 25-7, Ex. 6, p. 34.) Plaintiff was provided with a copy of the handbook and he was aware of the drug and alcohol policy.[8] The record shows that three individuals initially reported smelling alcohol in Plaintiff's vicinity, and a fourth individual later reported the same. (SMF, ¶¶ 15, 16.) Plaintiff does not challenge that Defendants had reasonable suspicion. Plaintiff claims, however, that because Defendants did not confront him until about 10:30 a.m., he might not return from the testing facility prior to the commencement of his FMLA leave, scheduled to begin at noon, and thus the testing could have potentially interfered with his leave. (Pl.'s Response to SMF, ¶ 17.) This argument fails because it is purely speculative. To assert a FMLA interference claim, Plaintiff needs to show that he was denied FMLA benefits and that the denial resulted in prejudice. *See Sarnowski, supra*; 29 U.S.C. § 2617(a). The record shows that Defendants requested that Plaintiff submit to a drug/alcohol

---

[8] Plaintiff previously submitted himself to a drug and alcohol test as a result of post-accident procedures. *See* note 4, *supra*.

test well over an hour prior to his scheduled quitting time. (SMF, ¶ 16.) Etchison testified that there was plenty of time for Plaintiff to be tested and make it back by noon. (Etchison Dep. 179:7-9.) Defendant produced no evidence to rebut this testimony except to state that "its lunch time" and "Lord knows how long you would sit there . . . ." (Stephenson Dep. 155:15, 19.) Plaintiff fails to make any showing of actual interference or prejudice and instead argues that submitting to the drug and alcohol testing *might* have resulted in interference with his FMLA leave. This argument is pure speculation and is insufficient to survive Defendants' motion for summary judgment. *See, e.g., United States ex rel. Brown v. Merant, Inc.*, 2002 WL 487160, *6 (E.D. Pa. March 29, 2002) (citing *Williams v. West Chester*, 891 F.3d 458, 460 (3d Cir. 1989)).

        Lastly, Plaintiff claims that JLG committed the "ultimate act of interference" when it terminated his employment which prevented him from taking FMLA leave anticipated subsequent to his termination. (Pl.'s Br. in Opp. at 11-12.) Plaintiff has not directed us to any caselaw or other authority that suggests that such a claim is properly brought as an interference claim. Rather, courts have consistently treated claims of interference as a result of termination as retaliation claims. *See Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 146-48 (3d. Cir. 2004); *Mascioli v. Arby's Rest. Grp., Inc.*, 610 F. Supp. 2d 419, 430-31 (W.D. Pa. 2009) (finding FMLA interference claim based upon employer's termination of employee in anticipation of future leave is in reality a FMLA retaliation claim); *Lynch v. Matthews Int'l*, 2010 WL 2640597, *6, n.6 (W.D. Pa. June 29, 2010) (same). This court shall do the same.

In short, the court finds that Plaintiff failed to meet his burden of producing evidence that could lead a reasonable fact finder to conclude that any of Defendants' actions interfered with Plaintiff's FMLA rights. The record is also devoid of any injury or prejudice to the Defendant based on the alleged interference. Therefore, the court will grant Defendants' motion for summary judgment as to Plaintiff's FMLA interference claim.

### B. FMLA Retaliation

Pursuant to the McDonnell Douglas analysis, a plaintiff claiming FMLA retaliation must first establish a *prima facie* case by demonstrating: (1) he took FMLA leave; (2) he suffered an adverse employment action; and (3) there was a causal connection between his leave and the adverse action. *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 800-806 (1973); *Conoshenti*, 364 F.3d at 146 (3d Cir. 2004). If the plaintiff offers sufficient proof of a *prima facie* case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the [adverse employment action.]" *McDonnell Douglas*, 411 U.S. at 802. Once the defendant articulates a legitimate, nondiscriminatory reason, the burden returns to the plaintiff who must then prove by a preponderance of the evidence that the proffered reason was not a true reason, but rather was a pretext for discrimination. *Id.* at 804. To meet this burden, Plaintiff must produce evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons [for termination]; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perksie*, 32 F.3d 759, 764 (3d Cir. 1994).

Plaintiff claims that Defendants retaliated against him for exercising his FMLA rights by terminating his employment. (Doc. 1, Compl. ¶ 48.) Defendants concede, for the purposes of this motion, that Plaintiff can establish his *prima facie* case. (Doc. 25 at 19.) In turn, Defendants assert that Plaintiff was terminated in accordance with company policy because he refused to take a drug and alcohol test based on reasonable suspicion. (*Id.* at 20.) Defendants argue that they are entitled to summary judgment because Plaintiff can not show that the basis for his termination was a pretext for discrimination and nothing on the record suggests that Plaintiff was terminated for any reason other than Plaintiff's refusal to submit to a drug and alcohol test. (*Id.*) The court agrees.

JLG's drug and alcohol policy unequivocally states that a refusal to undergo testing will result in discharge. The policy states:

> CONSEQUENCES FOR VIOLATION OF POLICY
> Applicants for employment that test positive for controlled substances will not be hired.
>
> For team members, disciplinary action, up to and including discharge, will be given for any of the following reasons:
>
> 1) Conviction of a criminal drug offense in the workplace – discipline up to and including discharge
>
> 2) *Refusal to undergo testing – discharge*
>
> 3) Altering, a sample/specimen to be tested or substituting another's bodily products for one's own, – discharge
>
> 4) Testing Positive for alcohol or controlled substances – discharge

(Doc. 25-7, Ex. 6, p. 34) (emphasis added.)

Plaintiff's argument is that his "refusal" was only regarding Defendants' offer to drive him to the testing facility and did not extend to the request that he submit to a test based on reasonable suspicion. Plaintiff believes that he is not in violation of company policy because the policy "fails to provide that a person being tested on a reasonable suspicion must be driven by a Company representative." (Pl.'s Br. in Opp. at 14.) In essence, Plaintiff refused to submit to a drug and alcohol test unless Defendants permitted him to be tested entirely on *his* terms and in accordance with *his* schedule. Although JLG's policy does not specify how or when an employee is to be tested, a reasonable interpretation of this policy would suggest Plaintiff's position constitutes a refusal to be tested. Indeed, Plaintiff apparently agrees. In his deposition, Plaintiff was repeatedly asked if he was refusing to be tested. (Stephenson Dep. 243:25-244:1.) His response, quoted above and reiterated here was: "Then I will, I will refuse to go, you'd go at your own free will, you'd have too – you'd do it when you were free to do it at 12:00. You weren't going to run down, come back work and leave at 12:00, that's [b.s.]." (*Id.* at 244:12-17.) Plaintiff's argument, taken to its logical extreme, would allow an employee who is under a reasonable suspicion of being under the influence to drive himself to a testing facility or demand to be tested hours, days, or even weeks later without such a demand constituting a "refusal" to be tested. The illogic of such a demand is apparent. Indeed, by refusing to be tested until hours later and by refusing Defendant's offer to drive him to the testing facility immediately, a reasonable fact finder would find that Plaintiff refused to be tested and, accordingly, was subject to JLG's policy which unequivocally requires that he be discharged.

Plaintiff attempts to offer evidence suggesting that JLG's policy was inconsistently applied as evidence of pretext. (Pl.'s Br. in Opp. at 13.) The record does not support such a finding. For example, Plaintiff argues that, consistent with past practices, he should have been permitted to drive himself to the testing facility. (*Id.*) Plaintiff points to an incident on August 16, 2007, wherein Plaintiff drove himself for drug and alcohol testing in connection with a workplace accident. (*Id.* at 5, 13.) However, the circumstances in that instance were very different from the circumstances on March 14, 2008. First, the August 16, 2007 testing was not required as a result of reasonable suspicion; it was required as a result of a workplace accident. Further, Plaintiff was not at work on the day of the testing; he was at home.[9] There was no reason for Defendants to believe that Plaintiff could not transport himself to the testing facility on August 16, 2007. Accordingly, this argument fails.

As further evidence that JLG's policy was inconsistently applied, Plaintiff points out that he was aware that another employee reported to work intoxicated and argues that that individual was not tested based on reasonable suspicion. (*Id.* at 5.) Plaintiff admits, however, that he did not report the intoxicated employee to his supervisor. (Stephenson Dep. 219:18-19.) He further admits that he is not aware whether anyone else reported the individual to any supervisor or human resources representative. (*Id.* at 219:24-220:1.) Defendant Wilson testified that he had no knowledge of this individual's intoxication, and if he had he would have sent

---

[9] Plaintiff's doctor instructed him to stay home on August 16, 2007, as a result of the accident, which occurred the previous day. (Stephenson Dep. 58:6-10.) JLG received the paperwork on April 16, but it did not include a drug and alcohol test report. (Doc. 25-9, Ex. 8, Medical Report Form.) Consequently, Defendant Etchison called Plaintiff at his home and requested that he return to the doctor's office to undergo a drug and alcohol test, which he did. (Stephenson Dep. 58:14-59:18.)

him for a drug and alcohol test. (Wilson Dep. 18:19-19:4.) Defendant Etchison was not even at work that day. (Stephenson Dep. 220:21-25.) There simply is no evidence that would suggest that Defendants had a reasonable suspicion regarding this individual. Therefore, Plaintiff's unsubstantiated arguments that JLG's policy was inconsistently applied fails to satisfy Plaintiff's burden of showing pretextual motivations by the Defendants.

Plaintiff also points to the timing of the events on March 14, 2008 as evidence of pretext. (Pl.'s Br. in Opp. at 13.) Plaintiff notes that he arrived at work at 4:00 a.m. and it was not until 10:30 a.m., or 90 minutes prior to his scheduled FMLA leave, that he was removed from the assembly line. (*Id.*) In the mean time, Plaintiff attended a line meeting at 7:00 a.m. and he put down twenty-five face plates at the request of Defendant Wilson. (*Id.*) During all this, Plaintiff emphasizes that no one suggested the scent of alcohol on his breath and further notes that no one observed slurred speech or an impaired gait. (*Id.* at 13-14.)

These arguments also fail to show pretext. First, the record shows, and Defendant does not dispute, that Etchison was first informed by Pharo that Plaintiff's co-workers reported smelling alcohol on Plaintiff's breath at 10:15 a.m. that morning. (Doc. 25-26, Ex. 25, p. 2.) Nothing on the record suggests that Defendants purposefully delayed removing Plaintiff from the assembly line so as to interfere with his scheduled FMLA leave. Rather, it appears that the timing of the events was based on when the reports were received by Defendants. Further, Plaintiff's argument that no one noticed slurred speech or an impaired gait is irrelevant. As discussed above, the relevant inquiry is whether Plaintiff's termination was based on his refusal to submit to a drug and alcohol test, not whether Plaintiff was actually

intoxicated.  Neither the timing of the events nor the fact that no one observed any additional evidence of intoxication satisfy Plaintiff's burden of showing his termination was pretextual.

In short, there is simply nothing in the record from which a reasonable jury could conclude that invidious discrimination was more likely than not the real reason Defendants terminated Plaintiff's employment.  Accordingly, Plaintiff's retaliation claim fails.

IV.     **Conclusion**

Plaintiff failed to introduce any evidence that would lead a reasonable factfinder to conclude that Defendants interfered with his FMLA rights or that Defendants proffered reason for his termination was pretext for discrimination. Absent such showings, Defendants are entitled to judgment as a matter of law. Accordingly, the court will grant summary judgment in favor of the Defendants.  The court will issue an appropriate order.

    s/Sylvia H. Rambo
    United States District Judge

Dated:  March 31, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANNIE L. STEPHENSON,** : | |
| : | **Case No. 1:09-CV-1643** |
| **Plaintiff** : | |
| : | |
| v. : | |
| : | |
| **JLG INDUSTRIES, INC., LARRY** : | **(J. Rambo)** |
| **ETCHISON, and KEVIN WILSON,** : | |
| : | |
| **Defendants** : | |

# O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendants' motion for summary judgment (Doc. 24) is **GRANTED.** The clerk of court shall enter judgment in favor of Defendants and against Dannie L. Stephenson on both remaining counts of Plaintiff's complaint and close the case.

                                                        s/Sylvia H. Rambo
                                                  United States District Judge

Dated:  March 31, 2011.